# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAS ENTERPRISES, INC. | CIVIL ACTION |
| VERSUS | NO: 11-2196 |
| ACCU-SYSTEMS, INC. | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Renewed Motion to Dismiss or, Alternatively, to Transfer Action filed by defendant, Accu-Systems, Inc. (Doc. # 13), is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff, LAS Enterprises, Inc., file an amended complaint by February 1, 2012, naming Advantek Machinery, LLC as a defendant and alleging its claims against all parties under Utah law.

## BACKGROUND

This motion questions the propriety of this court's personal jurisdiction over the defendant, whether this is a proper venue in which to assert the claims, whether plaintiff joined all necessary parties, and whether plaintiff stated a claim for which relief can be granted.

Plaintiff, LAS Enterprises, Inc., a corporation organized under the laws of Delaware that maintains its principal place of business in Louisiana, manufactures aluminum shutters. In February 2009, LAS discussed its need for a specific manufacturing machine with Advantek Machinery, LLC, a machinery distributor located in Tennessee. Advantek informed LAS that defendant Accu-Systems, which is incorporated under the laws of and maintains its principal place of business in Utah, could build the required machine, and the parties entered into negotiations. On July 31, 2009,

LAS contracted with Advantek for the building of the machine, and Advantek in turn contracted with Accu-Systems. LAS paid Advantek, and Advantek paid Accu-Systems. LAS saw demonstrations of Accu-Systems' products and the subject machine in Utah. Also, when the machine was completed, LAS approved samples and checked the machine in Utah.

In April 2010, under a separate contract than the contract to build the machine, Accu-Systems' representative came to Louisiana to install the machine and make adjustments to its software. LAS alleges that at the time of installation, the machine was not operating to LAS's specifications. In June 2010, Accu-Systems' technical representatives went to LAS to inspect and adjust the machine. LAS alleges that Accu-Systems' attempt to fix the machine was unsuccessful.

On May 2, 2011, Accu-Systems sent another representative to LAS's manufacturing facility in Louisiana to inspect the machine. LAS contends that Accu-Systems' representative made design modifications and adjustments to both the machine and the computer program. LAS states that this attempted repair was also unsuccessful. LAS alleges that all of Accu-Systems' attempts to repair, modify, and improve the physical aspects and the computer programming of the machine have failed and the machine has never been able to operate in conformity with LAS's specifications.

On July 6, 2011, LAS filed this suit against Accu-Systems in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, asserting claims of redhibition, breach of contract, and material misrepresentation. On September 1, 2011, Accu-Systems removed the action to the United States District Court for the Eastern District of Louisiana, alleging that the court has diversity subject matter jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

On September 13, 2011, Accu-Systems filed a motion to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim for which relief can be granted, and failure to join a party under Rule 19 of the Federal Rules of Civil Procedure, or in the alternative, to transfer to the United States District Court for the District of Utah, Salt Lake City Division.

## ANALYSIS

### A. Legal Standard for *In Personam* Jurisdiction

Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the Due Process Clause of the Constitution of the United States. ICEE Distribs., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003). Because Louisiana's long-arm statute extends to the limits of the Due Process Clause of the Fourteenth Amendment, the inquiry is whether subjecting a defendant to personal jurisdiction in Louisiana would offend due process. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999). Due process is not offended if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 66 S.Ct. 154, 158 (1945) (internal quotation and citation omitted).

"The plaintiff bears the burden of establishing [personal] jurisdiction but is required to present only *prima facie* evidence." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" in considering a motion to dismiss for lack of personal jurisdiction. Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002) (citing Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985)). The "uncontroverted allegations in the plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008) (quoting D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir. 1985)). However, unsubstantiated conclusory allegations are insufficient to establish personal jurisdiction. See Panda Brandywine Corp. v. Potomac Elec. Power, 253 F.3d 865, 868 (5th Cir. 2001).

Personal jurisdiction may be either specific jurisdiction or general jurisdiction. Defendants can be subject to general *in personam* jurisdiction if they have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. 1868, 1872 n.9 (1984). The continuous corporate operations within a state must be substantial and of such a nature as to justify suit. Int'l Shoe, 66 S.Ct. at 159. The "test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001) "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . .". Johnston, 523 F.3d at 609-10 (quoting Revell, 317 F.3d at 471 (citations omitted)).

When an action arises out of or is related to the defendant's contacts with the forum, jurisdiction is commonly referred to as "specific jurisdiction." See Helicopteros Nacionales, 104 S.Ct. at 1872 n.8. In Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2182 (1985), the Supreme Court of the United States stated:

4

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities.

(citations and footnotes omitted). "A single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993) (citing Helicopteros Nacionales, 104 S.Ct. at 1872 n.8).

"When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." Luv N' Care Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 473 (5th Cir. 2006) (citing Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374, 382 (5th Cir. 2002)). In determining whether maintenance of the suit would offend traditional notions of fair play and substantial justice, the court examines: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." Luv N' Care Ltd., 438 F.3d at 473.

### 1. *In Personam* Jurisdiction over Accu-Systems

#### a. General Personal Jurisdiction

LAS argues that this court has general jurisdiction over Accu-Systems because it sold five business machines to customers in Louisiana over the past four years and it maintains an interactive website that solicits customers.

J. Melvin Hatch, Accu-Systems' President, declared in his affidavit that Accu-Systems: (1) has no business offices in Louisiana; (2) is not registered to do business in Louisiana; (3) has no agents in Louisiana; (4) has no employees in Louisiana; and (5) has no assets in Louisiana. Accu-Systems' website is interactive only in that it allows a visitor to enter his or her email address to request a brochure. Hatch also declared that in all five of Accus-Systems' Louisiana sales, Accu-Systems did not solicit the business of any of the Louisiana buyers. Rather, the Louisiana buyer either contacted Accu-Systems directly or through a distributor and requested the manufacturing of a machine.

Hatch's affidavit establishes that Accu-Systems did not have continuous and systematic contacts with Louisiana. Rather, the contacts were sporadic. Therefore, LAS has not met its burden of establishing a *prima facie* case that Accu-Systems is subject to general personal jurisdiction in Louisiana.

#### b. Specific Personal Jurisdiction

##### i. Minimum Contacts

Accu-Systems entered into a contract with Advantk to build the machine knowing that LAS would use it in Louisiana. Accu-Systems communicated with LAS numerous times via telephone,

email, and Skype. Also, there are numerous emails from Joe Berry, Accu-Systems' Regional Sales Member, to Richard Maia, LAS's President, and other LAS employees regarding the machine's configurations and specifications. Berry also advertised another machine to a LAS employee via email.

From April 12, 2010 to April 14, 2010, Accu-Systems installed the machine in Louisiana and trained LAS employees on its operations. Maia declared in his affidavit that on at least three different occasions following delivery and installation of the machine, Accu-Systems sent technical representatives to Louisiana to modify and troubleshoot the machine.

Accu-Systems' contacts with Louisiana are related to LAS's claims against it. LAS's principle allegation is that Accu-Systems designed and manufactured a machine that did not meet LAS's required specifications and did not work properly. Accu-Systems' employees communicated with LAS's employees about the machine over the phone and via email. Accu-Systems' employees traveled to Louisiana to install the machine and train LAS's employees in its operation. Also, Accu-Systems made at least three subsequent trips to Louisiana to modify and repair the machine.

LAS has alleged sufficient facts to state a *prima facie* case that Accu-Systems had the minimum contacts with Louisiana required for the exercise specific personal jurisdiction.

### ii. Fair Play and Substantial Justice

Accu-Systems traveled to Louisiana on at least four occasions prior to the commencement of this suit without complaint of economic hardship. Louisiana has an interest in providing redress to its citizens who have purchased a defective product, and LAS has an interest in securing relief for receiving a product that does not work properly.

7

LAS has established that it would be fair and reasonable for this court to exercise specific personal jurisdiction over Accu-Systems. Therefore, Accu-Systems' motion to dismiss for lack of personal jurisdiction is DENIED.

**B. Venue**

On a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the movant bears the burden of demonstrating that venue is defective. Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966). Facts contained in the plaintiff's pleadings that are undisputed are accepted as true and conflicts in evidence are resolved in favor of the plaintiff. See Ginter ex. rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 448-49 (5th Cir. 2008).

Pursuant to 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded on diversity of citizenship, such as this action, except as otherwise provided by law, may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action my otherwise be brought.

In this case, the machine's defect was discovered within the district of the United States District Court for the Eastern District of Louisiana. Accu-Systems made at least three trips to Louisiana subsequent to delivery of the machine to modify and repair it. Therefore, this judicial district is one in which a substantial part of the events or omissions giving rise to the claim occurred and venue is proper under 28 U.S.C. § 1391(a)(2). Accu-Systems' motion to dismiss for improper venue is DENIED.

**C. Transfer**

Accu-Systems moved to transfer this action to the United States District Court for the District of Utah, Salt Lake City Division.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In <u>In re Volkswagen</u>, 545 F.3d 304, 315 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit stated that the court must examine private and public interest factors to determine whether transfer is warranted.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] in the application of foreign law.

(citing <u>Gulf Oil Corp. v. Gilbert</u>, 67 S.Ct. 839, 843 (1947)) (internal citations omitted). These factors are not necessarily exhaustive or exclusive. <u>Id</u>. The United States Court of Appeals for the Fifth Circuit has noted that "none . . . can be said to be of dispositive weight." <u>Action Indus., Inc. v. U.S. Fid. & Guar. Corp.</u>, 358 F.3d 337, 340 (5th Cir. 2004). "The moving party bears the burden of demonstrating that the case should be transferred to an alternate forum." <u>Time, Inc. v. Manning</u>, 366 F.2d 690, 698 (5th Cir. 1966). "The district court has wide discretion to determine whether to transfer for the convenience of parties and in the interest of justice." <u>Weber v. Convey</u>, 642 F.2d

91, 93 (5th Cir. 1981) (citing <u>Bearden v. United States</u>, 320 F.2d 99, 101 (5th Cir. 1963), <u>cert. denied</u>, 84 S.Ct. 679 (1964)).

**1. Private Interest Factors**

**a. Relative Ease of Access to Sources of Proof**

Accu-Systems contends that all relevant evidence and witnesses are located in Salt Lake City, Utah, because the machine was manufactured there. All witnesses that could testify to the design and manufacture of the machine presumably reside in Utah. However, the machine is located in Louisiana, and all of LAS's employees that can testify to the defective nature of the machine presumably reside in Louisiana.

While Utah may be more convenient to secure testimony of Accu-Systems' employees who took part in the machine's designing and manufacturing, Louisiana may be more convenient because the machine is located there. Therefore, this private interest factor is neutral.

**b. Availability of Compulsory Process to Secure the Attendance of Witnesses**

Rule 45(b)(2) of the Federal Rules of Civil Procedure governs where a subpoena issued by a court of the United States may be served. Rule 45(b)(2) states:

> Subject to Rule 45(c)(3)(A)(ii)[1], a subpoena may be served at any place: (A) within the district of the issuing court; (B) outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection; (C) within the state of the issuing court if a state statute or court rule allows service at that place

---

[1] Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure mandates that the issuing court quash or modify the subpoena if it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." An exception exists when dealing with travel within the state where the trial is held, but that is not applicable in the present case. <u>See</u> FED. R. CIV. P. 45(c)(3)(B)(iii).

of a subpoena issued by a state court of general jurisdiction sitting in
the place specified for the deposition, hearing, trial, production, or
inspection; (D) that the court authorizes on motion and for good
cause, if a federal statute so provides.

This court does not have subpoena power over nonparty witnesses in Utah, and the Utah court does not have subpoena power over nonparty witnesses in Louisiana, because Louisiana and Utah are more than one hundred miles apart. Thus, neither party has the ability to compel the appearance of witnesses who are unwilling to voluntarily appear for trial, and this private interest factor is neutral.

### c. Cost of Attendance for Willing Witnesses

Accu-Systems contends that, if its witnesses were willing to travel and testify, the hourly rates and associated expenses would be overwhelming. Accu-Systems also states that there would be little cost for LAS to travel to Utah since it has done so in the past. LAS contends that there is no hardship for Accu-Systems to defend itself in Louisiana because it sent its representatives to Louisiana numerous times to repair the machine.

Each party will be equally burdened with travel costs for its witnesses. Therefore, this private interest factor is neutral.

### d. All Other Practical Problems

Neither party has offered the court additional practical problems to analyze. This factor does not enure to the benefit of either party.

11

### 2. Public Interest Factors

#### a. Administrative Difficulties Flowing from Court Congestion

Accu-Systems contends that the United States District Court for the District of Utah is less congested than the United States District Court for the Eastern District of Louisiana. According to the Administrative Office of the United States Courts, in 2008, 9,954 cases were filed in the United States District Court for the Eastern District of Louisiana, while 1,256 cases were filed in the United States District Court for the District of Utah.[2] In 2009, 7,111 cases were filed in the United States District Court for the Eastern District of Louisiana, while 1,190 cases were filed in the United States District Court for the District of Utah.[3] In 2010, 6,568 cases were filed in the United States District Court for the Eastern District of Louisiana, and 1,311 cases were filed in the United States District Court for the District of Utah.[4]

---

[2] Administrative Office of the United States Courts, Federal Judicial Caseload Statistics for 2009. Table C. U.S. District Courts–Civil Cases Commenced, Terminated, and Pending During the 12 Month Periods Ending March 31, 2008 and 2009.

http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2009/tables/C00Mar09.pdf.

[3] Administrative Office of the United States Courts, Federal Judicial Caseload Statistics for 2010. Table C. U.S. District Courts–Civil Cases Commenced, Terminated, and Pending During the 12 Month Periods Ending March 31, 2009 and 2010.

http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C00Mar10.pdf

[4] Id.

The comparison of the number of filings in the United States District Court for the Eastern District of Louisiana versus the United States District Court for the District of Utah demonstrates that this public interest factor weighs in favor of transferring this matter to the United States District Court for the District of Utah.

### b. Local Interest in Having Local Interests Decided at Home

Accu-Systems has a local interest in deciding whether the machine, which was manufactured in Utah, worked properly. LAS has a local interest in receiving compensation for an alleged defective product being delivered to Louisiana. Thus, this public interest factor is neutral.

### c. Familiarity of the Forum with the Law that Will Govern the Case

A federal district court exercising diversity jurisdiction, such as this court, must apply the choice-of-law provision of the forum state to determine which state's substantive laws apply. See Klaxon v. Sten Elec. Mfg. Co., 61 S.Ct. 1020 (1941). Louisiana Civil Code Articles 3515 and 3537 set forth the rules to resolve conflict of laws regarding contracts. Article 3515 states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Article 3537 states the general rule for a choice-of-law analysis when dealing with conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The first paragraph of Revision Comment (c) of Article 3537 explains the relationship between Articles 3515 and 3537:

> The first paragraph of this Article enunciates the objective of the choice-of-law process for contract conflicts in language that is purposefully identical to that of the first paragraph in Article 3515. These two Articles and the comments accompanying them are intended to be read together. As in Article 3515, *supra*, the objective is to identify "the state whose policies would be most seriously impaired", that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences "if its law were not applied" to the issue at hand. As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision on each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interest of one state at the expense of the others.

LAS alleges claims of redhibition, breach of contract, and material misrepresentation against Accu-Systems. The machine was designed and built in Utah. Therefore, any defect in the

machine's design or construction, and breach of contract as to the desired specifications of the machine, occurred in Utah.  Although Accu-Systems came to Louisiana to install and repair the machine, LAS's claims are about the design and building of the machine and misrepresentations as to Accu-Systems' ability to design and build the machine, not the installation and repairs.  While the machine's alleged defect was discovered in Louisiana, the action of improperly building the machine occurred in Utah.

Utah has an interest in governing the liability of those who manufacture defective products within its borders.  All actions associated with the design and manufacture of the machine took place in Utah.  Utah has a stronger relationship to LAS's claims than Louisiana, and Utah's policies would be most seriously impaired if its law did not apply.  Because Utah law will govern LAS's claims, this public interest factor favors transferring this action to the United States District for the District of Utah.

### d.  Avoidance of Unnecessary Problems of Conflict of Laws

The United States District Court for the District of  Utah is more acquainted with Utah state law than the United States District Court for the Eastern District to Louisiana.  However, based on the facts of the present case,  this court doe not foresee any novel issue that would disrupt its orderly and efficient application of Utah state law.  As such, this public factor is neutral.

The four private interest factors and two of the public interest factors are neutral as to Louisiana or Utah.  Two of the public interest factors, court congestion and applicable law, favor transfer to Utah.  However, the fact that, on average, more cases are filed in the United States

15

District Court for the Eastern District of Louisiana than in the United States District Court for the District of Utah, is not by itself dispositive on whether transfer is appropriate. Further, although Utah law will govern, its application does not pose any barrier to this court's administration of justice. Therefore, Accu-Systems has not sufficiently shown that a balancing of the private and public interest factors weighs in favor of transfer to the United States District Court for the District of Utah for convenience of the parties and interests of justice. Giving proper deference to plaintiff's choice of forum, Accu-Systems' motion to transfer is DENIED.

**D. Joinder Under Rule 19 of the Federal Rules of Civil Procedure**

Accu-Systems seeks dismissal under Rule 12(b)(7) of the Federal Rules of Civil Procedure, which provides for dismissal for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure. Rule 19(a)(1)[5] requires that a person subject to process and whose joinder will not deprive the court of subject matter jurisdiction *must* be joined if:

(A)   in that person's absence, the court cannot accord complete relief among existing parties; or

(B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

   (i)   as a practical matter impair or impede the person's ability to protect the interest; or

---

[5] Prior to 1966, a party would have been characterized either as "necessary" or "indispensable." 7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604 at 35 (2001). "The necessary-party label has been eliminated to emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action and the term 'indispensable' is used in Rule 19(b) only in a conclusory sense." Id.

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

See Hood ex rel. Mississippi v. City of Memphis, Tenn., 2009 WL 1564160, *2 (5th Cir. 2009). "It is important to note that Rule 19(a) embraces all those persons who should be joined, including those whose joinder is not feasible and who ultimately may be regarded as indispensable under Rule 19(b).[6]"   7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604 at 35-36 (2001).

In this case, Advantek should be joined under Rule 19(a). LAS contracted with Advantek for the manufacture of the machine, and Advantek contracted with Accu-Systems. It is unclear how much input Advantek had into the design of the machine, and what its role was with respect to managing the relationship between LAS and Accu-Systems. Therefore, Advantek has an interest in this action which arise out of its contractual relationships with the parties. Advantek's joinder is feasible. Its joinder would not deprive this court of subject matter jurisdiction because it is a limited liability company that does not have any members in Louisiana. Also, there is no argument that Advantek is not subject to service of process. Thus, LAS must join Advantek as a party to this litigation.

---

[6] Rule 19(b) provides factors for determining whether a party who should be joined, but cannot be because it is not feasible due to the party's inability to be served or the deprivation of the court's subject matter jurisdiction with that party's joinder, is an indispensable party. If the party that cannot be joined is an indispensable party under Rule 19(b), than the court must consider whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. PRO. 19(b).

**E. Motion to Dismiss for Failure to State a Claim**

Because Utah law applies to this matter and Advantek must be joined as a party, the court will not address Accu-System's motion to dismiss LAS's redhibition claim at this time. That motion is DENIED WITHOUT PREJUDICE, and may be re-urged after LAS files an amended complaint adding Advantek as a defendant and stating its claims against all parties under Utah law.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Renewed Motion to Dismiss or, Alternatively, to Transfer Action filed by defendant, Accu-Systems, Inc. (Doc. # 13), is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff, LAS Enterprises, Inc., file an amended complaint by February 1, 2012, naming Advantek Machinery, LLC as a defendant and alleging its claims against all parties under Utah law.

New Orleans, Louisiana, this   20th   day of December, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**